Slip Op. 22-78

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **SHUZHEN ZHONG,** | |
| Plaintiff, | |
| v. | Before: Jane A. Restani, Judge |
| **UNITED STATES,** | Court No. 22-00041 |
| Defendant. | |

# OPINION

[In challenge to customs broker's license denial, judgment on the pleadings for defendant.]

Dated: July 7, 2022

Shuzhen Zhong, plaintiff, of Staten Island, N.Y., proceeding pro se.

Luke Mathers, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, N.Y., for defendant. With him on the brief were Brian M. Boynton, Principal Deputy Assistant Attorney General, Patricia M. McCarthy, Director, Justin R. Miller, Attorney-in-Charge, International Trade Field Office, and Aimee Lee, Assistant Director. Of counsel on the brief was Mathias Rabinovitch, Office of the Assistant Chief Counsel, International Trade Litigation, U.S. Customs and Border Protection.

\* \* \*

Restani, Judge: Plaintiff, Shuzhen Zhong, proceeding pro se, brings this action to challenge the decision of U.S. Customs and Border Protection's ("Customs") upholding the denial of her appeal of her result on the Customs Broker License Exam ("CBLE") and consequent denial of a customs broker's license. Compl., ECF No. 2 (Feb. 10, 2022) ("Compl."); Pl.'s Resp. to Mot. for more definite statement, ECF No. 6 (Apr. 8, 2022) ("Pl.'s Resp."); Pl.'s Letter in support of Mot. for J. on the pleadings ("Pl.'s Br."), ECF No. 13 (June 7,

2022); section 641(e) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1641(e) (2018).[1] Customs denied Ms. Zhong's appeal based on her failure to attain a passing score of 75 percent or higher on the CBLE held on April 25, 2018 ("April 2018 exam"). Compl. at 2; Def.'s Mot. for J. on the Agency R. or J. on the pleadings, ECF No. 14 (June 17, 2022) ("Gov't's Br.") at 8; 19 C.F.R. § 111.11(a)(4) (2017).

Before the court, Ms. Zhong appeals Customs' decision to deny her credit for two questions on the April 2018 exam. See Pl.'s Resp. at 2, 8–11. Should Ms. Zhong receive credit for one of the two contested questions, she would attain a passing score of 75 percent. She also raises concerns with Customs' handling of her administrative appeal. See Pl.'s Resp. at 1.

The government opposes Ms. Zhong's request for relief and argues that Customs' decision to deny her credit for the contested questions was reasonable. See Gov't's Br. at 11–16. On this basis, the government asserts that she did not attain a passing score of 75 percent or higher on the April 2018 exam and, consequently, that Customs "did not abuse its discretion, act arbitrarily or capriciously, lack substantial evidence in reaching its decision, or otherwise violate the law." Id. at 10; 5 U.S.C. § 706(2)(A). The court has construed Ms. Zhong's filings as a motion for judgment on the pleadings. See Letter, ECF No. 11 (May 26, 2022).[2]

---

[1] Further citations to the Tariff Act of 1930, as amended, are also to the relevant portions of Title 19 of the U.S. Code, 2018 edition.

[2] In its filing, the government included a motion for judgment on the agency record or, in the alternative, judgment on the pleadings. See Gov't's Br. at 2. The court construes the motion as a judgment on the pleadings under U.S. Court of International Trade ("USCIT") R. 12(c) because the relevant agency documents were attached to Ms. Zhong's pleadings. See Compl. at 3–14; Pl.'s Resp. at 4–11. Further, all parties have had a full opportunity to present all pertinent material and the court concludes it need not resort to any material outside the pleadings.

For the reasons discussed below, Ms. Zhong's motion is denied.

## BACKGROUND

Ms. Zhong sat for the CBLE on April 25, 2018. See Admin. R., Ex. A at 2, ECF No. 10 (May 19, 2022). On May 18, 2018, Customs notified her that she had received a score of 70 percent—5 percent below the passing score of 75 percent. See Admin. R., Ex. B at 37. She first appealed this result, challenging questions 32 and 56, among others, as faulty. See id., Ex. C at 40–46. Customs denied this first appeal. See id., Ex. D at 48.

Ms. Zhong appealed a second time again challenging questions 32 and 56, among others. See id., Ex. E at 50–56. Customs granted Ms. Zhong credit for one question, but otherwise denied her credit for questions 32 and 56. Id., Ex. L at 80–88. This left her with a score of 73.75 percent, one question from a passing score. Id. at 80. When issuing its decision letter, Customs made two mistakes. Id. First, Customs mistakenly referred to Ms. Zhong by the incorrect honorific "Mr." Id. Second, Customs mistakenly addressed the letter to 63 Quintin Road instead of the correct address at 64 Quintin Road. Id.

After receiving Customs' decision, Ms. Zhong filed a complaint with the court, challenging Customs' denial of credit for her answers to questions 32 and 56. See Compl.; Pl.'s Resp. at 8–11.

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction to hear Ms. Zhong's appeal pursuant to 28 U.S.C. § 1581(g)(1) (2020) ("The Court of International Trade shall have exclusive jurisdiction of any civil action commenced to review . . . any decision of the Secretary of the Treasury to deny a customs broker's license."). "[T]he material allegations of a complaint are taken as admitted and are to

Court No. 22-00041                                                                                             Page 4

be liberally construed in favor of the plaintiff(s)." Humane Soc'y v. Brown, 19 CIT 1104, 1104, 901 F. Supp. 338, 340 (1995); see also Haines v. Kerner, 404 U.S. 519, 520 (1972) ("[T]he allegations of [a] pro se complaint [are] h[e]ld to less stringent standards than formal pleadings drafted by lawyers.").

Two elements of review apply with respect to the appeal of an applicant's result on the CBLE.  See Kenny v. Snow, 401 F.3d 1359, 1361 (Fed. Cir. 2005).  The first element addresses whether Customs' decision to deny an applicant credit for a contested question was supported by "substantial evidence."  See id. at 1361–62 (concluding that the "decision to deny credit [for the contested question] [was] supported by substantial evidence") (citing 19 U.S.C. § 1641(e)(3)). The second element addresses whether, on the basis of an applicant's failure to attain a passing score on the CBLE, Customs' decision to deny the applicant a customs broker's license was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  Kenny, 401 F.3d at 1361 (citing 5 U.S.C. § 706 (2000)).

## LEGAL CONTEXT

### I.    Application for a customs broker's license

Customs brokers are responsible for the application of statutes and regulations "governing the movement of merchandise into and out of the customs territory of the United States." Dunn-Heiser v. United States, 29 CIT 552, 553, 374 F. Supp. 2d 1276, 1278 (2005). Pursuant to 19 U.S.C. § 1641(b)(2), the Secretary of the Treasury is vested with "broad powers" with respect to the licensing of customs brokers.  Depersia v. United States, 33 CIT 1103, 1105, 637 F. Supp. 2d 1244, 1247 (2009).  19 U.S.C. § 1641(b)(2) provides:

> The Secretary may grant an individual a customs broker's license only if that individual is a citizen of the United States. Before granting the license, the Secretary may require an applicant to show any facts deemed necessary to establish that the applicant is of good moral character and qualified to render valuable service to others in the conduct of customs business. In assessing the qualifications of an applicant, the Secretary may conduct an examination to determine the applicant's knowledge of customs and related laws, regulations and procedures, bookkeeping, accounting, and all other appropriate matters.

19 U.S.C. § 1641(b)(2) (2016).

Customs has promulgated several regulations to implement this statute. For instance, 19 C.F.R. § 111.11 details the "[b]asic requirements" for an individual to obtain a customs broker's license:

> (a) Individual. In order to obtain a broker's license, an individual must:
>
> > (1) Be a citizen of the United States on the date of submission of the application . . . and not an officer or employee of the United States Government;
> >
> > (2) Attain the age of 21 prior to the date of submission of the application…;
> >
> > (3) Be of good moral character; and
> >
> > (4) Have established, by attaining a passing (75 percent or higher) grade on an examination taken within the 3-year period before submission of the application . . . that he has sufficient knowledge of customs and related laws, regulations and procedures, bookkeeping, accounting, and all other appropriate matters to render valuable service to importers and exporters.

19 C.F.R. § 111.11(a)(1)–(4). Further, § 111.12(a) provides information with respect to the submission of an application for a customs broker's license, and § 111.13 regulates the examination that is described in § 111.11(a)(4).

## II. Customs Broker License Exam

Customs' regulations provide that "[t]he examination for an individual broker's license" — referred to as the CBLE — is "designed to determine the individual's knowledge of customs

and related laws, regulations and procedures, bookkeeping, accounting, and all other appropriate matters necessary to render valuable service to importers and exporters." Id. § 111.13(a); see 19 U.S.C. § 1641(b)(2). The fact that this "comprehensive written licensing exam" constitutes one of the requirements to obtain a customs broker's license reflects the "complex[ity]" of the applicable statutes and regulations as well as the "integral role [of customs brokers] in international trade." Dunn-Heiser, 29 CIT at 553–54, 374 F. Supp. 2d at 1278.

Customs administers the CBLE twice each year, in April and October. 19 C.F.R. § 111.13(b) (2017). "The exam is open-book," and applicants are advised to bring certain specified materials to which they may refer during the exam, including the Harmonized Tariff Schedule of the United States ("HTSUS") and Title 19 of the Code of Federal Regulations.[3] Dunn-Heiser, 29 CIT at 554, 374 F. Supp. 2d at 1278.

As noted, an applicant is required to attain a score of 75 percent or higher to pass the CBLE. 19 C.F.R. § 111.11(a)(4); 19 U.S.C. § 1641(b)(2). An applicant who does not attain a passing score, however, is entitled to retake the exam. 19 C.F.R. § 111.13(e). In addition, an applicant who does not attain a passing score is entitled to appeal this result to the Broker Management Branch ("BMB"). Id. § 111.13(f). Should the BMB affirm the result, the applicant is entitled to request that the Executive Assistant Commissioner ("EAC") review the BMB's decision. Id. Should the EAC uphold the BMB's decision, the applicant is then entitled to appeal the EAC's decision to the USCIT. 19 U.S.C. § 1641(e)(1) ("[An] applicant . . . may

---

[3] See also Customs Broker License Exam (CBLE), U.S. CUSTOMS AND BORDER PROT., https://www.cbp.gov/trade/programs-administration/customs-brokers/license-examination-notice-examination (last visited June 23, 2022) (providing a list of permitted reference materials).

Court No. 22-00041                                                                                              Page 7

appeal . . . by filing in the Court of International Trade, within 60 days after the issuance of the decision or order, a written petition requesting that the decision or order be modified or set aside in whole or in part.").

## DISCUSSION

The court concludes that Customs' decision to deny Ms. Zhong credit for two questions on the April 2018 exam was supported by substantial evidence. On this basis, she does not establish that she scored 75 percent or higher on the exam. Accordingly, Customs' decision to deny Ms. Zhong a customs broker's license was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." See 5 U.S.C. § 706(2)(A).

**I.      Customs' denial of credit for the contested questions**

**A.      Question 32**

First, Ms. Zhong appeals Customs' decision to deny her credit for question 32 on the April 2018 exam. Question 32 states:

> What is the CLASSIFICATION of glazed ceramic mosaic cubes on a mesh backing, which measure approximately 1 centimeter wide by 1 centimeter long by 1 centimeter thick, and have a water absorption coefficient by weight of .3 percent?
> A. 6802.10.0000
> B. 6907.21.2000
> C. 6907.21.3000
> D. 6907.30.3000
> E. 6914.10.8000

Admin. R., Ex. L at 83 (emphasis omitted). Customs designated D as the correct answer, and Ms. Zhong chose answer B. Id.

Ms. Zhong argues that answer B "provided more of a detail oriented, comprehensive description that better matched the glazed ceramic mosaic cubes on a mesh backing," whereas

Court No. 22-00041 Page 8

answer D was less accurate because it "omitted the water absorption coefficient." Pl.'s Resp. at 9.

Customs' decision to deny her credit for question 32 was supported by substantial evidence. The court applies the General Rules of Interpretation ("GRIs") for custom classification "in numerical order and only continues to a subsequent GRI if proper classification of the imported goods cannot be accomplished by reference to a preceding GRI." In Zone Brands, Inc. v. United States, 44 CIT __, __, 456 F. Supp. 3d 1309, 1315 (2020) (quotation omitted). GRI 1 requires classification to "be determined according to the terms of the headings and any relative section or chapter notes." GRI 1 (2022). HTSUS chapter and section notes are considered binding statutory law. See BenQ Am. Corp. v. United States, 646 F.3d 1371, 1376 (Fed. Cir. 2011). Once the correct heading is identified, the court determines which subheading correctly identifies the merchandise in question. Orlando Food Corp. v. United States, 140 F.3d 1437, 1440 (Fed. Cir. 1998) (citing GRI 1, 6).

Here, heading 6907 explicitly covers question 32's cubes because it provides for "ceramic mosaic cubes." See 6907, HTSUS. At the subheading level, the language of 6907.21 covers "[f]lags and paving, hearth or wall tiles, other than those of subheading 6907.30 and 6907.40" of a water absorption coefficient by weight not exceeding 0.5 percent. Subheading 6907.21, HTSUS (emphasis added). Thus, subheading 6907.21 specifically excludes "[m]osaic cubes and the like" of subheadings 6907.30 and 6907.40. Id. Subheading 6907.30 covers "[m]osaic cubes and the like, other than those of subheading 6907.40." Subheading 6907.30, HTSUS. And subheading 6907.40 only covers "[f]inishing ceramics." Subheading 6907.40,

HTSUS. As a result, at the subheading level, the ceramic mosaic cube in question 32 is explicitly covered by 6907.30 and, thus, explicitly excluded from 6907.21.

Although subheading 6907.30.3000 omitted the language about water absorption coefficient that question 32 mentioned, and subheading 6907.21.200 included it, answer B is nevertheless incorrect because subheading 6907.30 covers mosaic cubes regardless of water absorption. For an applicant to select answer B it would require skipping the proper subheading and ignoring the structure of the HTSUS. See In Zone Brands, 456 F. Supp. 3d at 1315. Such analysis is erroneous. Thus, answer D is the best answer to question 32. Customs' decision to deny Ms. Zhong credit for answer B was reasonable.

### B.    Question 56

Second, Ms. Zhong appeals Customs' decision to deny her credit for question 56 on the April 2018 exam. Question 56 states:

> While examining your client's shipment of 1,000 handbags at the container examination station, CBP discovered that the goods bear a mark suspected of infringing a trademark associated with a well-known designer. The designer's mark is registered on the Principal Register of the U.S. Patent and Trademark Office and recorded with CBP. The suspect mark is not identical with or substantially indistinguishable from the registered and recorded mark; rather, CBP determines that it copies or simulates the registered and recorded mark and, consequently, detains the handbags.
>
> Which of the following options is available to the importer to obtain relief from detention within 30 days?
> A. The importer may remove or obliterate the suspect marks from the handbags in such a manner that they are incapable of being reconstituted.
> B. The importer may label the merchandise with the following statement: "This product is not a product authorized by the United States trademark owner for importation and is physically and materially different from the authorized product."
> C. The importer may file a petition under 19 CFR pt. 171, persuasively

Court No. 22-00041                                                                                                Page 10

> arguing that the suspect marks do not actually so resemble the recorded
> mark as to be likely to confuse the public.
> D. The importer may claim the personal use exemption under 19 CFR 148.55.
> E. None of the above.

Admin. R., Ex. L at 86.  Customs designated the correct answer as A, and Ms. Zhong chose B.  Id.

She argues that question 56 suffered from "a major grammatical defect which confused" her and allegedly other test takers, resulting in a question with no possible answer.  Pl.'s Br. at 1; Pl.'s Resp. at 11.  She asserts that "copies" has the same meaning as "identical," and thus the question contradicted itself and could not be answered.  Pl.'s Br. at 1; Pl.'s Resp. at 11.

Customs' decision to deny Ms. Zhong credit for question 56 was supported by substantial evidence.  The question's phrasing, "identical with or substantially indistinguishable from" and "copies or simulates" are quoted from the applicable federal regulations.  Compare 19 C.F.R. § 133.21(a) with id. § 133.22(a).  The regulations define a "counterfeit mark" as a "spurious mark that is identical with, or substantially indistinguishable from, a mark registered."  Id. § 133.21(a).  Another regulation, however, defines a "copying and simulating" mark as "one which may so resemble a recorded mark . . . as to be likely to cause the public to associate the copying or simulating mark . . . with the recorded mark."  Id. § 133.22(a).  If a mark copies or simulates, then the regulation provides that the importer can either remove or obliterate the mark so that it cannot be "reconstituted."  Id. § 133.22(c).

Here, Customs intended to "test[] the ability to differentiate between goods bearing counterfeit trademarks . . . and goods bearing copying or simulating trademarks" and identify proper remedies.  See Pl.'s Resp. at 10.  While "copy" might be synonymous with "identical" in

some contexts, this question clearly sought to have test takers distinguish between the applicable regulations and identify the proper remedy. Compare 19 C.F.R. § 133.21(a) with id. § 133.22(a). Because the question states that the mark "copies or simulates" the importer may remove or obliterate the mark. See Admin. R., Ex. L at 86; see also 19 C.F.R. § 133.22(a), (c). Thus, answer A is the best answer to question 56. Because there was a best answer available, Ms. Zhong's contention that the question was so confusing as to result in no possible answer lacks merit. Thus, Customs' decision to deny Ms. Zhong credit for answer B was reasonable.

**II.     Customs' decision to deny plaintiff a customs broker's license**

In reviewing Customs' decision to deny a customs broker's license, the court is required to determine whether such a decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). A lawful ground for such a decision is an applicant's failure to pass the CBLE. See 19 U.S.C. § 1641(b)(2); 19 C.F.R. § 111.16(b)(2), 111.11(a)(4).

As discussed, a passing score on the CBLE is 75 percent or higher. 19 C.F.R. § 111.11(a)(4). The court previously recognized that to successfully appeal a result on the CBLE, an applicant must establish entitlement to credit for the "minimum" number of questions that the applicant requires to achieve a passing score. Harak v. United States, 30 CIT 908, 929 (2006). Should the applicant fail to meet this "minimum threshold," then Customs' denial of a customs broker's license is not "arbitrary, capricious, or otherwise not in accordance with law." Id. (citing 5 U.S.C. § 706(2)(A)).

Ms. Zhong scored 73.5 percent on the April 2018 exam. See Admin. R., Ex. L at 80. To attain a passing score of 75 percent or higher, she is required to establish that she is entitled to

receive credit for at least one of the two contested questions. Based on the foregoing analysis, the court concludes that Customs' decision to deny Ms. Zhong credit for both of the contested questions was supported by substantial evidence. For this reason, Customs' decision to deny her appeal was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." See 5 U.S.C. § 706(2)(A); see also 19 C.F.R. § 111.16(b)(2).[4]

## CONCLUSION

For the foregoing reasons, the court concludes that Customs' decision to deny Ms. Zhong credit for questions 32 and 56 on the April 2018 exam was supported by substantial evidence, and consequently that Customs' decision to deny her a customs broker's license was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." See 5 U.S.C. § 706(2)(A).

Accordingly, the court denies plaintiff's motion for judgment on the pleadings and grants defendant's corresponding motion. Judgment will enter for defendant dismissing the action.

/s/    Jane A. Restani
Jane A. Restani, Judge

Dated: July 7, 2022
       New York, New York

---

[4] To the extent Ms. Zhong raises a claim related to Customs sending its appeal decision to the wrong address or addressed to "Mr." Zhong, the claim does not give rise to any possibility of relief. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). She has suffered no recognizable harm because she was able to pursue administrative appeals and was able to challenge the result in court. See 19 U.S.C. § 1641(e)(1); 19 C.F.R. § 111.13(f).